

**David Valicenti (DV- 9090)**
CAIN HIBBARD MYERS & COOK, PC
66 West Street
Pittsfield, Massachusetts 01201
(413) 443-4771
dvalicenti@cainhibbard.com
Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

USA HERBALS, LLC and CURB YOUR CRAVINGS, LLC,

                Plaintiffs,

-against-

SYBERVISION, INC., BLACKSTONE NUTRITION INC., STEVEN A. DEVORE, individually, and GARRETT DEVORE, individually,

                Defendants.

------------------------------------------------------------------X

Case No: 08cv7571-PGG ECF Case

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs, USA Herbals, LLC and Curb Your Cravings, Inc. (collectively "CYC" or "Plaintiff"), by its attorneys, Cain Hibbard Myers & Cook, PC, allege as follows:

**PRELIMINARY STATEMENT**

1.    This is an action for damages and injunctive relief based upon Defendants' fraudulent Internet marketing activities. As more fully alleged below, Defendants maintain a series of websites purporting to provide "product reviews" to consumers. The Defendants' websites claim to contain unbiased and helpful consumer information. However, the "reviews" are fake and the websites are nothing more than a marketing scheme for Defendants' competing products, which they promote on the sites. The Defendants recently targeted one of CYC's successful products by purchasing the brand name as a "key word" on search engines such as

Google. When a consumer enters CYC's product name as a search term, the Defendants' website purportedly "reviewing" that product is displayed as a search result, along with CYC's product name and inflammatory language like "warning" and "scam" prominently displayed in the search result. Through this scheme, Defendants lure consumers who are specifically looking for CYC's product to the Defendants' websites with the promise of a useful review. The Defendants instead divert consumers using CYC's proprietary content to their competing products with lies and misinformation. As a result, Defendants derive profit by deceiving unsuspecting consumers at the expense of both the consumers and CYC in violation of federal trademark and copyright law and various other state laws.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 15 U.S.C. § 1121(a), 17 U.S.C. § 501(b) and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

3. This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Defendants are subject to personal jurisdiction under New York's Long Arm Statute because they:

    a)     transact business within the state or contracted to supply goods or services in the state; and/or

    b)     committed tortious acts within the state; and/or

    c)     committed tortious acts without the state causing injury to persons or property within the state and Defendants regularly do or solicit business, or engage in other persistent courses of conduct in New York, or derive

substantial revenue from goods used or consumed or services rendered in New York, or expect or should reasonably expect the acts to have consequences in New York and derive substantial revenue from interstate or international commerce.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.

## PARTIES

6. Plaintiff, USA Herbals, LLC, is a limited liability company organized under the laws of the State of New York, and maintains a principal place of business at 575 8th Avenue, New York, New York.

7. Plaintiff, Curb Your Cravings, LLC, is a limited liability company organized under the laws of the State of New York, and maintains a principal place of business at 575 8th Avenue, New York, New York. USA Herbals and Curb Your Cravings are affiliated companies.

8. Upon information and belief, Defendant SyberVision Inc. ("SyberVision") is a corporation organized under the laws of the State of Utah, with a principal place of business at 1627 North Mountain Oaks Drive, Orem, Utah.

9. Upon information and belief, Defendant Blackstone Nutrition Inc. ("Blackstone") is a corporation organized under the laws of the State of Utah, with a principal place of business at 1627 North Mountain Oaks Drive, Orem, Utah.

10. Upon information and belief, Defendant Steven A. DeVore is an individual residing in Utah. Defendant Steven DeVore is the founder, principal, managing official and registered agent of Defendant SyberVision.

11. Upon information and belief, Steven DeVore personally directed and was a primary actor in the activities that are the subject of this action.

12. Upon information and belief, Defendant Garrett DeVore is an individual residing in Utah. Defendant Garrett DeVore is the founder, principal, incorporator and registered agent of Defendant Blackstone.

13. Upon information and belief, Defendant Garrett DeVore personally directed and was a primary actor in activities that are the subject of this action.

## FACTUAL BACKGROUND

CYC's Business

14. Plaintiff, CYC, develops and markets a variety of herbal, natural health and wellness products. CYC markets its products widely and has become recognized as a leader in the marketplace.

15. CYC is the developer and owner of an all-natural, herbal weight loss product that is sold under the brand name the "Pink Patch".

16. CYC spends millions of dollars each year, and has expended great time and effort in the development, promotion and marketing of its product under the Pink Patch trademark.

17. Through CYC's extensive efforts, as well as the product's quality and overwhelming customer satisfaction, the Pink Patch has become highly successful and well known.

18. CYC has extensively and exclusively used the Pink Patch mark throughout the United States and the world. Through such use, the mark the "Pink Patch" has become distinctively connected with CYC. As a result of this effort, goodwill and the expanding reputation of the mark, customers and others in the marketplace recognize the Pink Patch mark as an indication of the high quality of products offered by CYC.

19. In connection with the marketing of the Pink Patch, CYC has created original artwork used in its advertisements and packaging for the Pink Patch and is the owner of all right,

title and interest, including all copyrights, in the advertisements and packaging.

20. Among others, CYC is the owner of a copyright in certain packaging used in connection with the Pink Patch. This work is the subject of a Certificate of Copyright Registration issued by the Register of Copyrights effective July 25, 2008, bearing registration number TX 6858419. A copy of the Certificate of Registration is shown in Exhibit A attached to this Complaint (CYC's "Copyrighted Packaging"). (The exhibits attached to the Complaint are incorporated by reference into this Complaint in their entirety).

21. Customers and others in the marketplace have come to recognize the Pink Patch packaging as a distinctive source identifier for CYC's product.

22. CYC markets and sells the Pink Patch on the Internet. CYC is the registered owner of the Internet domain name "thepinkpatch.com". Because CYC's marketing of the Pink Patch is Internet-driven, a key component of CYC's ability to remain dominant in the marketplace is consumers' ability to seek and obtain accurate information about the Pink Patch using search tools such as Internet search engines.

Defendants' Competing Business

23. Upon information and belief, Defendants SyberVision and Blackstone operate under the primary and personal direction and control of Defendants Steven DeVore and Garrett DeVore.

24. Upon information and belief, neither SyberVision nor Blackstone has any other officers, directors or board members.

25. Both SyberVision and Blackstone maintain a common business address in Orem, Utah.

26. Upon information and belief, Steven DeVore and Garrett DeVore have a familial relationship.

27. Upon information and belief, both SyberVision and Blackstone transact business substantially through the Internet.

28. Upon information and belief, all Defendants, acting in concert, operate various websites to market products online, including weight loss products that are in direct competition with CYC's products.

29. Upon information and belief, Defendant SyberVision is the registered owner of the Internet domain name "sybervision.com".

30. Defendants use the interactive website "sybervision.com", and Defendants' related websites, to solicit business in New York and effect commercial transactions with customers, including customers in New York.

31. Upon information and belief, Defendants, acting in concert, also operate and control the Internet domain name "consumerbestdeals.com" and transact business through an interactive website located principally at that uniform resource locator.

32. Upon information and belief, the website located at "consumerbestdeals.com" has been registered surreptitiously by proxy in order to hide the Defendants' identities.

33. Defendants use the interactive website "consumerbestdeals.com", and Defendants' related websites, to solicit business in New York and to effect commercial transactions with customers, including customers in New York. Through the sybervision.com and the consumerbestdeals.com websites and others, the Defendants have transacted business in New York, have entered into contracts to supply goods in New York, and upon information and belief have delivered a substantial volume of goods in New York and have derived substantial revenue from New York consumers.

34. Upon information and belief, the activities conducted at "sybervision.com," "consumerbestdeals.com", and Defendants' related websites, were conducted for the benefit of and with the knowledge and consent of the individual Defendants Steven DeVore and Garrett

DeVore, and Steven DeVore and Garrett DeVore exercised control over Defendant SyberVision and Defendant Blackstone in the matters that give rise to this Complaint.

Defendants' Unlawful Conduct

35. Upon information and belief, beginning in or about April 2008, and possibly earlier, Defendants advertised through various Internet search engines including, without limitation, Microsoft and Google, by bidding on the keywords "Pink Patch" and related terms.

36. By doing so, an advertisement and link to Defendants' websites were displayed as a "sponsored link" (the "Infringing Sponsored Links") when a computer user entered the key words "Pink Patch" into search engines at google.com and live.com.

37. The Infringing Sponsored Links displayed CYC's trademark and included bold headings that stated: "**PinkPatch Fat Burner Scam**" and "**PinkPatch Warning?**" The advertisements also contained subtext visible to the user with statements such as "Does the PinkPatch really work," and "Is PinkPatch Safe?" By way of example, true and accurate screenshots of some Infringing Sponsored Links are attached as Exhibit B.

38. Upon information and belief, the Defendants' intent was to use the Infringing Sponsored Links to divert customers who are specifically searching for CYC's Pink Patch product to Defendants' websites, which market competing products.

39. The "consumerbestdeals.com" and "sybervision.com" websites are touted by the Defendants as informative and unbiased "product reviews". However, upon information and belief, the "reviews" are fake, and are intended to disparage a competitor's product and cause consumers to buy Defendants' competing products, which, not surprisingly, the "reviews" rate very highly. Defendants promote their competing products on the "review" websites where they falsely disparage CYC's product.

40. Specifically, Defendants displayed on the consumerbestdeals.com website (the

"consumerbestdeals.com Webpage") a picture of CYC's Copyrighted Packaging alongside a "Pink Patch Critique."

41. The "Pink Patch Critique" falsely states that the Pink Patch was "created by Miracle Burn" and that "*[t]he Pink Patch is a weight loss scam* **that auto-bills your credit card just from the free trial**," and that "*[t]he Pink Patch is a weight loss scam* **that targets young women**." (Emphasis added.) A true and accurate screen shot of the consumerbestdeals.com Webpage, as it existed in April 2008, is attached as Exhibit C.

42. The Pink Patch is not "created by Miracle Burn".

43. Upon information and belief, Defendants are aware that the Pink Patch is not "created by Miracle Burn".

44. Upon information and belief, this is a willfully false statement intended to disparage the Pink Patch because Miracle Burn has publically been labeled a "rip-off" and has been the subject of investigative reporting by CBS News.

45. Defendants' Infringing Sponsored Links stating "**PinkPatch Fat Burner Scam**" and "**PinkPatch Warning?**" and the consumerbestdeals.com Webpage stating that the Pink Patch is created by Miracle Burn, are willful attempts to disparage a very popular product, take market share from CYC, and unfairly sell the Defendants' competing products.

46. Upon information and belief, beginning in or about April 2008, Defendants, without authorization from CYC, also utilized Infringing Sponsored Links that directed Internet users, including CYC's customers and prospective customers, to a webpage located within the website "sybervision.com" (the "sybervision.com Webpage"), which was created by Defendants. The sybervision.com Webpage promotes Defendants' competing products and allows prospective customers to purchase Defendants' competing products.

47. Defendants displayed on the sybervision.com Webpage a picture of CYC's Copyrighted Packaging alongside a "Pink Patch Review".

48. As with the consumerbestdeals.com Webpage, the "Pink Patch Review" on the sybervision.com Webpage stated falsely that the Pink Patch is made by "Miracle Burn." Under a bolded heading called "**Pink Patch Update**," the "Pink Patch Review" contained hyperlinked text stating, "**Check out the investigation done by CBS against *MiracleBurn, the company that makes the Pink Patch*.**" (Emphasis added.) A true and accurate screen shot of the sybervision.com Webpage as it existed in April 2008 is attached as Exhibit D.

49. The Defendants' websites directed CYC's customers and prospective customers to a website that contains an investigatory news article (the "CBS Article"), ostensibly produced by the news agency CBS, about a company unaffiliated with either CYC or the Pink Patch called "Miracle Burn". The CBS Article is an exposé on Miracle Burn and its diet supplement products. Among other things, the CBS Article questions the veracity of many of the claims made by Miracle Burn in marketing its products and associates Miracle Burn with a company that "has [the Better Business Bureau of Indiana's] *lowest rating*."

50. Also set forth in the "Pink Patch Review" on the sybervision.com Webpage were false statements that "*[t]he Pink Patch is a weight loss scam* **that targets young women**." (Emphasis added.) See Exhibit D.

51. The "Pink Patch Review" further contains consumer reviews, purportedly by third parties, that make false and defamatory statements about the Pink Patch. See Exhibit E.

52. In or about April 2008, CYC discovered a substantial decline in its click-through rates on search engines, and a concomitant increase in its advertising costs, and a drop in sales, which were directly attributable to the Defendants' Infringing Sponsored Links and the consumerbestdeals.com and sybervision.com Webpages (collectively, the "Infringing Content").

53. CYC's counsel contacted Defendants, which caused them to remove some of the Infringing Content. CYC's click-through rate and sales immediately rebounded, and its advertising costs decreased.

54. CYC, which markets the Pink Patch exclusively through its Internet business, lost customers as a result of the Defendants' wide dissemination of the Infringing Content on the Internet.

55. In addition, even after being notified of their illegal conduct, Defendants have surreptitiously, through the sybervision.com and consumerbestdeals.com Webpages, and other websites, re-commenced their bidding on CYC's key words and their attempts to direct CYC customers to infringing websites.

56. Defendants' scheme is designed to ride the coat tails of a successful product by illegally using CYC's proprietary content and using false and deceptive tactics, by disparaging CYC's product, its brand and its goodwill, and reaping revenue from sales of competing products.

## FIRST CLAIM
### (Copyright Infringement - Violation of 17 U.S.C. § 501)

57. CYC repeats each and every allegation contained in paragraphs "1" through "56" as though they were set forth at length herein.

58. CYC is the owner of the exclusive copyright in CYC's Copyrighted Packaging.

59. The Register of Copyrights issued CYC a Certificate of Registration for the Copyrighted Packaging on July 25, 2008, bearing registration number TX 6858419, as shown in Exhibit A.

60. Defendants copied and placed images of CYC's Copyrighted Packaging on the consumerbestdeals.com Webpage and the sybervision.com Webpage without authorization.

61. Defendants' use of CYC's Copyrighted Packaging has infringed and continues to infringe upon CYC's copyright in the Copyrighted Packaging.

62. Defendants' infringement of CYC's Copyrighted Packaging was willful and caused harm to CYC.

63. As a result, CYC has suffered damages.

## SECOND CLAIM
### (False Advertising - Violation of 15 U.S.C. § 1125(a)(1)(B))

64. CYC repeats each and every allegation contained in paragraphs "1" through "63" as though they were set forth at length herein.

65. Defendants have misrepresented the nature, characteristics, qualities, or geographic origin of CYC's goods, services, or commercial activities in connection with the commercial advertising and promotion of Defendants' competing products.

66. CYC has a reasonable interest in being protected against Defendants' false or misleading claims and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising.

67. Defendants' acts constitute commercial speech made for the purpose of influencing consumers to buy Defendants' goods or services, and is disseminated sufficiently to the relevant purchasing public.

68. Defendants' have made false or misleading descriptions or representations of fact concerning the nature, characteristics, qualities, or geographic origin of CYC's goods, services, or commercial activities that are material.

69. Defendants' unlawful conduct constitutes unfair competition and false designation of origin or sponsorship in violation of the Lanham Act section 43(a), 15 U.S.C. § 1125(a).

70. Defendants' unlawful acts have been willful, deliberate, intended to benefit Defendants at CYC's expense and made in bad faith.

71. Defendants' conduct has caused CYC damages.

## THIRD CLAIM
### (Trademark Infringement and False Designation – Violation of 15 U.S.C. § 1125(a)(1)(A))

72. CYC repeats each and every allegation contained in paragraphs "1" through "71" as though they were set forth at length herein.

73. The Pink Patch is a valid mark that is entitled to protection under the Lanham Act.

74. By using the Pink Patch mark without authorization and in connection with marketing their own competing products, Defendants used the Pink Patch mark in commerce, in connection with the sale or advertising of goods or services, and without CYC's consent.

75. Defendants' use of the Pink Patch mark in connection with marketing their own competing products is likely to cause confusion as to the affiliation, connection, or association of Defendants with CYC, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by CYC.

76. Defendants' unlawful conduct constitutes unfair competition and false designation of origin or sponsorship in violation of the Lanhan Act section 43(a), 15 U.S.C. § 1125(a).

77. Defendants unlawful acts have been willful, deliberate, intended to benefit Defendants at CYC's expense and made in bad faith.

## FOURTH CLAIM
### (Injurious Falsehood - Product Disparagement)

78. CYC repeats each and every allegation contained in paragraphs "1" through "77" as though they were set forth at length herein.

79. Defendants knowingly and intentionally published, without CYC's consent, false and derogatory matter, which contained false statements of fact denigrating the quality of goods or services provided by CYC.

80. Defendants' purpose was to interfere with CYC's relations with customers and prospective customers, to CYC's detriment.

81. CYC has suffered pecuniary loss resulting directly from the effect of Defendants' wrongful conduct by way of lost customers, Internet traffic and profits, and increased advertising costs.

82. During the period when the offending content was online, CYC's advertising costs increased and its sales decreased. When the content was removed, sales rebounded and advertising costs decreased.

83. CYC advertising costs are based on its "click through rate"("CTR"), or the ratio between the number of times CYC's link is displayed on a search engine and the number of times a user clicks on the link. CYC also measures the value of its advertising by its conversion rate, or the number of purchases achieved as compared to the number of users who click on a CYC link.

84. During the time that the offending content was online, CYC's CTR and conversion rate both dropped. When the offending content was reduced, CYC's CTR and conversion rate rebounded.

85. As a result, CYC paid more for advertising and lost customers as a direct result of Defendants' wide dissemination of the Infringing Content on the Internet.

86. The nature of CYC's business, where its products are sold on the Internet and customers are not readily identifiable, prevents the specific identification of lost customers.

87. Upon information and belief, the changes in advertising costs and conversion rate are due to the impact of the offending content, which dissuaded consumers from clicking on CYC's links and from purchasing CYC's products.

88. The actual advertising costs increase and loss of sales caused by Defendants' conduct is estimated at $19,200.

89. In addition, CYC suffered lost productivity of its work force in response to the Defendants' actions and related expenses, at a cost of $3,600 and legal costs and expenses in the

amount of $13,500, required to respond to the Defendants' actions. CYC anticipates substantial additional attorneys' fees and costs associated with litigating this action.

### FIFTH CLAIM
### (False and Deceptive Trade Practices – Violation of N.Y. Gen. Bus. Law § 349)

90. CYC repeats each and every allegation contained in paragraphs "1" through "89" as though they were set forth at length herein.

91. Defendants' deceptive acts were directed at consumers.

92. Defendants' disseminated false statements and created false impressions of source and sponsorship that are misleading in a material way.

93. CYC has been injured as a result of Defendants' unlawful acts.

### SIXTH CLAIM
### (False Advertising – Violation of N.Y. Gen. Bus. Law § 350)

94. CYC repeats each and every allegation contained in paragraphs "1" through "93" as though they were set forth at length herein.

95. Defendants' deceptive acts were directed at consumers.

96. Defendants disseminated false statements and created false impressions of source and sponsorship that are misleading in a material way.

97. CYC has been injured as a result of Defendants' unlawful acts.

### SEVENTH CLAIM
### (Defamation)

98. CYC repeats each and every allegation contained in paragraphs "1" through "97" as though they were set forth at length herein.

99. Defendants published false and defamatory statements of fact regarding CYC and its products on their website, the consumerbestdeals.com Webpage.

100. Defendants published false and defamatory statements of fact regarding CYC and its products on their website, the sybervision.com Webpage.

101.  The false statements were published to the general public without privilege or authorization.

102.  Defendants were negligent in causing these statements to be published and the statements were published with knowledge and/or reckless disregard of their falsity.

103.  The false statements constitute defamation per se in that they tend to injure CYC in its trade or business and/or impugn the basic integrity or creditworthiness of CYC's business.

104.  Defendants' conduct has injured CYC and unless restrained will continue to injure CYC, causing monetary damages to CYC in an amount to be determined at trial, as well as irreparable injury to CYC.

105.  CYC has suffered pecuniary loss resulting directly from the effect of Defendants' wrongful conduct by way of lost customers, Internet traffic and profits, and increased advertising costs.

106.  Defendants' wrongful conduct was knowing, willful, deliberate, malicious and intended to injure CYC.

## EIGHTH CLAIM
### (Tortious Interference with Prospective Business)

107.  CYC repeats each and every allegation contained in paragraphs "1" through "106" as though they were set forth at length herein.

108.  CYC had business or prospective business relationships with its customers and prospective customers, and Defendants knew of those relationships.

109.  Through Defendants' improper websites and Infringing Content, Defendants intentionally interfered with those business relationships.

110.  Defendants' acts were conducted for a wrongful purpose and/or Defendants utilized dishonest, unfair, or improper means.

111.  Defendants' acts injured CYC's business or prospective business relationships

and CYC has been harmed due to Defendants' interference.

### NINTH CLAIM
### (Common Law Unfair Competition)

112. CYC repeats each and every allegation contained in paragraphs "1" through "111" as though they were set forth at length herein.

113. Defendants have misrepresented the nature, characteristics, qualities, or geographic origin of CYC's goods, services, or commercial activities.

114. CYC has a reasonable interest to be protected against the Defendant's false or misleading claims and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising.

115. Defendants' acts constitute commercial speech made for the purpose of influencing consumers to buy Defendants' goods or services, and disseminated sufficiently to the relevant purchasing public.

116. Defendants' statements contains false or misleading descriptions or representations of fact concerning the nature, characteristics, qualities, or geographic origin of CYC's goods, services, or commercial activities that is material.

117. Defendants' unlawful acts have been willful, deliberate, intended to benefit Defendants at CYC's expense and made in bad faith.

### TENTH CLAIM
### (Common Law Trademark Infringement)

118. CYC repeats each and every allegation contained in paragraphs "1" through "117" as though they were set forth at length herein.

119. The Pink Patch is a valid mark that is entitled to protection.

120. By using the Pink Patch mark without authorization and in connection with

marketing their own competing products, Defendants used the Pink Patch mark in commerce, in connection with the sale or advertising of goods or services, and without CYC's consent.

121.   Defendants' use of the Pink Patch mark and in connection with marketing their own competing products is likely to cause confusion as to the affiliation, connection, or association of Defendants with CYC, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by CYC.

122.   Defendants unlawful acts have been willful, deliberate, intended to benefit Defendants at CYC's expense and made in bad faith.

## ELEVENTH CLAIM
### (Civil Conspiracy)

123.   CYC repeats each and every allegation contained in paragraphs "1" through "122" as though they were set forth at length herein.

124.   Defendants, through their defamatory statements and tortious conduct, have engaged in a civil conspiracy to harm CYC.

125.   Defendants reached an agreement between each other to use the Infringing Content to harm CYC and to compete unfairly with CYC.

126.   By making the Infringing Content available to CYC's customers and prospective customer and/or by otherwise using the Infringing Content, Defendants committed overt acts in furtherance of their agreement.

127.   Each Defendant intentionally participated in the furtherance of their plan or purpose.

128.   As a result, Defendants' unlawful acts have caused harm to CYC and CYC has suffered damages.

## TWELFTH CLAIM
### (Permanent Injunction)

129. CYC repeats each and every allegation contained in paragraphs "1" through "128" as though they were set forth at length herein.

130. Defendants' unlawful acts have caused harm to CYC and unless enjoined by this Court, Defendants acts will continue to cause irreparable harm to CYC for which there is no adequate remedy at law.

131. Based on the foregoing, Plaintiff seeks the imposition of a permanent injunction against the Defendants, individually and collectively, and their shareholders, officers, directors, agents, servants and employees and attorneys, and all persons in active concert or participation with them, prohibiting them from:

- Purchasing CYC trademarks or related terms as keywords on search engines;

- using CYC's copyrighted materials or the Infringing Content in any way;

- using CYC's trademarks or trade dress or any trademark, trade dress, word, phrase, expression, or logo that is in any manner confusingly similar thereto or a colorable imitation thereof, in any commercial manner or in any manner that might cause any consumer or prospective consumer of natural health, weight loss or wellness products to believe that there is any causal connection or association with CYC or any of their duly licensed agents;

- representing in any fashion, or holding themselves out as affiliated in any manner with CYC;

- making or publishing, orally or in writing, any statement to customers or prospective customers, competitors, the press or others, that would in any manner disparage CYC or its products, or which would have the effect of confusing anyone to believe that

Defendants are, or represent, or are authorized by or in any manner affiliated with CYC or its products;

- carrying on any business activity that in any way references CYC or its products; and
- impeding the communications or relationship between CYC and any customer.

**WHEREFORE**, CYC demands judgment as follows:

(1) On the First Claim, an award of actual damages pursuant to 17 U.S.C. § 504 against Defendants, jointly and severally, in an amount to be proven at trial, plus interest; an award of statutory damages under 17 U.S.C. § 504 of up to $150,000 per occurrence; an award of attorney's fees and costs related to this matter under 17 U.S.C. § 505; and injunctive relief pursuant to 17 U.S.C. § 502 to prevent Defendants from continuing to infringe upon CYC's copyrighted materials;

(2) On the Second, Third, Ninth and Tenth Claims, pursuant to 15 U.S.C. § 1117(a) and state law, an award of CYC's actual damages against Defendants, jointly and severally, in an amount to be proven at trial, plus interest; damages in an amount no less than treble CYC's damages; Defendants' profits; CYC's costs of the action and reasonable attorneys' fees; and injunctive relief against Defendants' use of CYC's trademarks in commerce pursuant to 15 U.S.C. § 1116(a);

(3) On the Fourth, Seventh, Eight and Eleventh Claims, compensatory damages to be determined at trial in this action, punitive damages, reasonable attorneys' fees and the costs of this action and injunctive relief;

(4) On the Fifth and Sixth Claims, an injunction and damages to be determined at trial in this action, punitive damages, CYC's reasonable attorneys' fees and the costs of this

action; and

(5) The costs of this action, reasonable attorneys' fees and such other and further relief as this Court may find to be just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated:  August 26, 2008

> Respectfully submitted,
>
> USA Herbals, LLC and Curb Your Cravings, LLC
>
> By their attorneys,
>
> _____
> David Valicenti (DV - 9090)
> CAIN HIBBARD MYERS & COOK, PC
> 66 West Street
> Pittsfield, Massachusetts 01201
> (413) 443-4771